IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Tion Swain, | ) | CASE NO. 3:15-cv-01770 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| Alan J. Lazaroff, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Tion Swain ("Petitioner" or "Swain"), through counsel, filed this habeas

corpus action pursuant to 28 U.S.C. § 2254. Doc. 1 ("Petition").   Swain challenges the

constitutionality of his conviction and sentence in *State v. Swain*, Case No. 2012-CR-106 (Erie

County).  Following a jury trial, Swain was found guilty of three counts: complicity to commit

felonious assault with a firearm specification (Count 1), complicity to commit aggravated

robbery with a firearm specification (Count 2), and having weapons while under disability with a

firearm specification (Count 3).   Doc.  9-2, pp. 5-16.   The trial court sentenced Swain to an

aggregate sentence of 17 years in prison.  Doc. 9-1, p. 13.

This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2.  On December 29, 2015, Respondent filed an

Answer/Return of Writ.  Doc. 9.  Petitioner has not filed a Traverse, although one was due on or before February 12, 2016.[1]

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS in part** and **DENY in part** Swain's Petition.

## I.        Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Swain's conviction as follows:

> {¶ 2} Ashlei Kimble–Palmer was a dancer at a strip club called "Lido" in Cleveland, Ohio, in November and December of 2011. While employed at Lido, she met a man who lived in Cleveland named Derek Jackson, whom she knew only as "D the Barber." Jackson did not know Ashlei's name, but referred to her as "Light Skinned Dancer." Jackson was attracted to Ashlei. They texted with one another on occasion, beginning in November of 2011. Unbeknownst to Jackson, however, Ashlei was in a relationship with Justin Stowers. Stowers was released from prison on December 31, 2011, after Ashlei posted bond for him. She did so with a check that bounced. The bondswoman expected to be paid and Stowers had no money. The state's theory of this case centers around a scheme concocted by Stowers to obtain money. Under this plan, Ashlei would lure an unsuspecting man to Sandusky, Ohio, so that Stowers could rob him. There were several potential victims, but Jackson was the first to take the bait. According to the state, Stowers enlisted help from Tion Swain and Keith Alexander to execute this robbery.

> {¶ 3} On January 9, 2012, Ashlei sent a text message to Jackson inviting him to come to Sandusky. He agreed to do so, and she provided him with an address at which to meet her. Jackson texted with Ashlei during his drive, advising her as he got closer to Sandusky. He had programmed the address provided to him by Ashlei into his GPS. He discovered that the address was invalid. He texted Ashlei and she asked him to meet her at a bar called the Sail Inn. Upon his arrival, he texted her and she indicated that she would be there after changing her clothes.

---

[1] Petitioner's Traverse was due forty-five days from the filing of Respondent's Return of Writ, i.e., on or before February 12, 2016.  Doc. 5.

{¶ 4} Ashlei walked to the Sail Inn and on her way, she passed by the corner of Meigs and East Madison Street where Stowers' cousin lived. Stowers was on the porch with Alexander and Swain. When Ashlei arrived at the bar, she was preoccupied with her cell phone. She was texting, using Twitter, and making phone calls. Jackson offered to buy a drink for her but she declined. He insisted, she quickly consumed the drink, and she suggested that they leave. She asked Jackson what kind of car he drove and he told her that he drove a red Chevy truck. Ashlei communicated this to a person with whom she was speaking on the phone. Jackson assumed that Ashlei was providing this information to a friend out of concern for her safety. She was, however, providing the information to Stowers who would be watching for them.

{¶ 5} When they left the Sail Inn, Ashlei directed Jackson where to drive. She instructed him to park along a curb on East Madison Street. Ashlei exited the vehicle first and walked behind the truck, waiting for Jackson to get out. She saw Alexander approaching in the middle of the street. Ashlei and Jackson began to cross the street and Ashlei intended to walk towards Meigs and Madison Street where she would return to Stowers' cousin's house. As she was making her way to the sidewalk, Alexander and another man confronted Jackson. One of the men said to Jackson, "you know the procedure," signifying to Jackson that he was being robbed. Both men had guns, but much to the surprise of his assailants, so did Jackson. Jackson testified that one of the men fired his gun, Jackson fired back twice, the other man fired at him, and Jackson fired again.

{¶ 6} Jackson quickly jumped into his truck and sped off. His assailants continued to shoot at him, striking one of his tires and causing it to go flat. When the shots were fired, Ashlei ran toward Stowers' cousin's home. Stowers came up behind her and quickly surpassed her. As she was running, her foot went numb. When she got to the home, she discovered that she had been shot and claimed that it was Swain who shot her. She lay on the floor while Stowers bandaged her foot. Alexander and Swain came into the house. Swain had a gun and he and Stowers "tossed" it between each other.

{¶ 7} After speeding away from Madison Street, Jackson stopped when he came upon Post 22 of the State Highway Patrol office on Fremont Road. He spoke with troopers and explained what had happened. He described the shooters as a white masked male, whose height he estimated to be between 5′11″ and 6′1″, and a stocky black man. Jackson eventually told troopers that he had a weapon with him and had fired back at the men. He told them that his weapon was in the console of his truck and the troopers retrieved it. He did not realize it that night, but the next day he discovered that his leg had been grazed by a bullet.

{¶ 8} Meanwhile, neighbors who heard the gunfire had called 9–1–1 and the state highway patrol communicated with Sandusky police after learning about the incident from Jackson. The police went to the scene of the shooting, collected evidence, and looked for the perpetrators of the assault. They recovered bullet

casings from three types of guns: a .45 caliber, a .25 caliber, and a 9 mm pistol. Jackson had been carrying the 9 mm gun. Five casings from that gun were retrieved. A .25 caliber bullet was removed from Ashlei's foot.

{¶ 9} Jackson could not identify his assailants and Ashlei's name was not at that point known to Jackson. Police ascertained her identity from cell phone records. The state's theory of this case was developed with assistance from Ashlei and from Alexander, both of whom agreed to provide testimony in exchange for reduced charges and a recommendation from the prosecutor that they receive a more lenient sentence.

{¶ 10} According to Alexander, Stowers called him that day and asked him to help with the robbery. Swain picked up Alexander and Stowers in his girlfriend's car and took them to Stowers' cousin's home. Alexander denied talking with Swain about the plan to rob Jackson, but he admitted that Swain was on the porch with him and Stowers. He said they were all wearing black hoodies that night and both he and Swain were carrying guns. Alexander testified that he was carrying the .45. He said that Swain was carrying a small gun that he thought was a .22 but could have been a .25. No one testified to seeing Swain shoot Jackson and no one would admit to seeing Swain at the scene. In prior statements to police and prosecutors, however, Alexander and Ashlei had implicated Swain as a participant and, by process of elimination, the other shooter. At trial they reluctantly acknowledged these prior statements.

{¶ 11} In addition to Alexander's and Ashlei's testimony, the jury heard a recorded telephone conversation between Stowers and Swain that took place while Stowers was in the county jail. During that conversation, Stowers told Swain that Ashlei approached police with information implicating him and that without that evidence, there would be no case against Swain. He said that the state had concealed that Ashlei was acting as an informant because of concerns that Swain's attorney would reveal her identity to defendants and their families and would attempt to intimidate her.

{¶ 12} Swain presented no witnesses of his own and did not testify, but he questioned the state's theory on a number of points. First, he argued that he does not match the description that Jackson gave of the shooter. Swain, is approximately 5′7″ and is African–American. Second, he emphasized that no one identified him as the shooter and no one admitted seeing him at the scene. Third, he insisted that there was no evidence that Swain had communicated with Ashlei, Stowers, or Alexander in planning the robbery. Fourth, he questioned the state's theory that Stowers needed the money and submitted that neither Ashlei nor Stowers had reason to believe that Jackson would be carrying money that night. Fifth, he pointed out that Ashlei and Alexander had motive to be untruthful because they had reached plea agreements with the state. And he urged that in the jailhouse phone call, Swain did not implicate himself as a participant in the crime.

*State v. Swain*, 2014 WL 1344393, * 1-3, 2014-Ohio-1308, ¶¶ 2-12 (Ohio App. Mar. 28, 2014);

*see also* Doc. 9-2, pp. 121-143.

## II.       Procedural Background

### A.       State Conviction

On March 13, 2012, an Erie County Grand Jury indicted Swain on one count of

complicity to commit felonious assault, one count of complicity to commit aggravated robbery,

and one count of having weapons under disability.  Doc. 9-2, pp. 1-3.   The indictment included a

firearm specification pursuant to O.R.C. § 2941.145 as to all three counts.  Doc. 9-2, p. 2.

Swain, through counsel, entered a plea of not guilty to the indictment.  Doc. 9-2, p. 4.   A jury

found Swain guilty as charged in the indictment.  Doc. 9-2, pp. 5-10.  On November 8, 2012, the

trial court sentenced Swain to an aggregate prison sentence of 17 years.[2]  Doc. 9-2, pp. 11-16.

### B.       Direct appeal

On December 13, 2012, Swain, through counsel, filed a Notice of Appeal.  Doc. 9-2, pp.

17-24.  In his appellate brief filed in the Sixth District Court of Appeals (Doc. 9-2, pp. 25-60),

Swain raised the following assignments of error:

> 1. Tion Swain was denied his right to equal protection, as guaranteed by the
>    United States Constitution, Art. I, Sec. 10 of the Ohio Constitution, when
>    the State of Ohio used two peremptory challenges to strike two African American
>    prospective jurors.[3]
>
> 2. The trial cour[t] erred by allowing in numerous hearsay statements of co-
>    defendants when the statements were not made during the course and
>    furtherance of the conspiracy and there was no i[n]dependent proof of a
>    conspiracy.

---

[2] The Judgment Entry was entered on the docket on November 15, 2012.  Doc. 9-2, p. 11.

[3] The first assignment of error is described differently in the table of contents than in the body of Swain's appellate
brief.  *See* Doc. 9-2, p. 26 ("The trial court erred by not having a jury trial on damages when there was a request for
a jury trial on all issues.").  As argued in his brief, Swain's first assignment of error raised a *Batson* challenge.  Doc.
9-2, pp. 39-42.  Swain does not raise a *Batson* challenge in his habeas petition.

3. The trial court erred by allowing into evidence a tape of a jail house call from an alleged co-defendant to the defendant when the co-defendant did not testify and was not subject to confrontation cross examination in violation of the United States Constitution and the Art. I, Sec. 10 of the Ohio Constitution.

4. The trial court erred by allowing into evidence a tape of a jail house call from an alleged co-defendant to the defendant when the co-defendant made disparaging and untrue remarks about the defendant's counsel made by the State of Ohio to the co-defendant's attorney.

5. The evidence was insufficient as a matter of law and the verdict was against the manifest weight of the evidence.

Doc. 9-2, pp. 39-51.   The State of Ohio filed its response brief on September 26, 2013 (Doc. 9-2, pp. 61-106) and, on November 26, 2013, Swain filed an amended reply brief (Doc. 9-2, pp. 107-120).  On March 28, 2014, the Sixth District Court of Appeals affirmed the trial court's judgment.  Doc. 9-2, pp. 121-143.  On April 7, 2014, Swain filed a motion for reconsideration with respect to the appellate court's ruling as to the fourth assignment of error.  Doc. 9-2, pp. 144-149.  The State of Ohio filed a response.  Doc. 9-2, pp. 150-152.  On May 8, 2014, the Sixth District Court of Appeals denied Swain's motion for reconsideration.  Doc. 9-2, pp. 153-156.

On May 12, 2014, Swain, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio (Doc. 9-2, pp. 157-158) and Memorandum in Support of Jurisdiction (Doc. 9-2, pp. 159-200), raising the following propositions of law:

1. A trial court errs by allowing in numerous hearsay statements of co-defendants based on a previous trial of a co-defendant and when the statements by other co-defendants were not made during the course and furtherance of the conspiracy and there was no i[n]dependent proof of a conspiracy.

2. A trial court errs by allowing into evidence a tape of a jail house call from a co-defendant to the defendant when the co-defendant did not testify and was not subject to confrontation cross examination in violation of the United States Constitution and the Art. I., Sec. 10 of the Ohio Constitution. *State v. Tims* (1967), 9 Ohio St. 2d 136.

3.  The trial court errs and violates the defendant's right to effective assistance of counsel by allowing into evidence a tape of a jail house call from an alleged co-defendant to the defendant when the co-defendant made disparaging and untrue remarks about the defendant's counsel made by the State of Ohio to the co-defendant's attorney.

4.  When evidence is insufficient as a matter of law and verdict is against the manifest weight of the evidence a reviewing court must discharge the defendant.  *State v. Jenks* (1991), 61 Ohio St.3d 259, *State v. Tompkins* (1977), 78 Ohio St.3d 380.

Doc. 9-2, pp. 168-176.

On September 3, 2014, the Supreme Court of Ohio declined to accept jurisdiction of

Swain's appeal.  Doc. 9-2, p. 201.

## C.  Federal habeas corpus

On September 1, 2015, Swain, through counsel, filed his Petition asserting four grounds

for relief.  Doc. 1.  Respondent filed an Answer/Return of Writ.  Doc. 9.  Petitioner has not filed

a Traverse.  Each ground for relief is discussed more fully below in Section III.C.

## III.  Law and Analysis

## A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and  Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling

AEDPA provision states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at 101 (quoting *Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.     Exhaustion and procedural default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[4]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).   Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th

---

[4] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*   "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**C.**    **Grounds for relief**

**1.  Ground One should be DISMISSED**

The Petition sets forth Ground One and the facts supporting it as follows:

**Ground One**: The trial court erred and violated the petitioner's rights by allowing numerous hearsay statements of co-defendants based on previous trial of a co-defendant and those statements were not made in furtherance of conspiracy, nor was there independent proof of a conspiracy.

**Supporting Facts**: The court made an out of court finding of conspiracy based on the trial of an *alleged* co-defendant Justin Stowers. Justin Stowers was tried separately from Petitioner, in Justin's trial the court found that Justin and Justin's co-defendant Ashleigh Palmer conspired. The Court used that finding to make a link between Ashleigh and the Petitioner, Tion Swain. Justin Stowers never testified in Petitioner's trial. Keith Alexander testified that he was doing the robbery with Justin Stowers.

Keith Alexander testified on direct:

Q. Who was supposed to be doing the robbery?
A. I figured it was me and Stowers
Q. And who else?
A. That's, that's all I figured. He didn't say nothing about nobody else.

On cross examination Keith Alexander testified as follows:

Q. All right. Now, and you never spoke to Tion about robbing anybody, did you.
A. No sir

***
Ashlei answered:

Q. All right. Now, if we go back to this situation - - okay, one other thing. You never were around Justin when he spoke to Tion about anything to do with this, correct?
A. Correct.
Q. Okay. So you have no admissible evidence, direct or circumstantial, to testify that Mr. Justin Stowers talked to Tion about anything.
A. Correct.
Q. All right. So when you said that he did the dirty work, you were just speculating?
A. Correct.

Q. All right. And at the time you made these statements you had no knowledge
that the alleged assailant that wasn't Keith, okay was six or six one, correct?
A. Correct. Tr. 786

In response to the plan the so-called co-defendant Ashlei testified as follows:

Q. All right. So it really wasn't anything that you guys really sat down and
planned and plotted correct?
A. Correct.
Q. All right. How much - you're charged with aiding and abetting. How much
were you supposed to get out of this?
A. I don't know.
Q. All right. You never talked about that, correct?
A. Correct
Q. You guys – did you have the same mindset as to what to do?
A. I'm not sure.

The State of Ohio had two cooperating, witnesses Keith Alexander and Ashleigh
Palmer and neither one of those witnesses can state what the plan was and how
the conspiracy operated. The State never asked one direct question about how this
plan, this conspiracy came into existence from the two co-defendants. There was
no independent evidence of a conspiracy. The alleged conspirators, after having
been given all type of consideration never indicated that they conspired with Tion.

Doc. 1, pp. 17-18 (emphasis in original).

Swain raised Ground One in his direct appeal to the Sixth District Court of Appeals as his

second assignment of error (Doc. 9-2, pp. 42-45) and in his Memorandum in Support of

Jurisdiction filed with the Supreme Court of Ohio as his first proposition of law (Doc. 9-2, pp.

168-171).

In Ground One, Swain challenges the trial court's evidentiary ruling allowing

testimony/statements from two witnesses, Ashlei[5] Palmer and Keith Alexander.   In reviewing

the claim asserted in Ground One, the state court of appeals stated:

{¶ 25} In his second assignment of error, Swain argues that the trial court erred
when it allowed the state to present statements made by Alexander and Ashlei. In
his brief, Swain cites certain passages of his cross-examination of Ashlei and

---

[5] Swain uses different spellings of Ms. Palmer's first name, i.e., Ashleigh and Ashlei.  "Ashlei" will be used herein
since that is the spelling utilized by the state court of appeals.  *See Swain*, 2014 WL 1344393.

Alexander, intending to show that the state failed to prove that either Ashlei or Alexander conspired with Swain, thus precluding the state from relying on Evid.R. 801(D)(2)(e) to admit out-of-court statements offered through those witnesses to establish that Swain participated in the offense. What Swain fails to do, however, is to identify what hearsay statements he believes were improperly admitted through these witnesses.

{¶ 26} " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Under Evid.R. 801(D)(2)(e), certain statements are not "hearsay." The rule states, in pertinent part:

> A statement is not hearsay if: * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

{¶ 27} Swain's entire argument in support of his second assignment of error revolves around whether a conspiracy existed. He is correct that the existence of a conspiracy must be established before a trial court may admit what otherwise may constitute inadmissible hearsay statements. *State v. Hand,* 107 Ohio St.3d 378, 2006–Ohio–18, 840 N.E.2d 151, ¶ 100. But while Swain argues vehemently that the state failed to provide independent proof that a conspiracy existed, he has provided us with no potential hearsay statements to evaluate as having been correctly or incorrectly allowed by the trial court under Evid.R. 801(D)(2)(e).

{¶ 28} We find Swain's second assignment of error not well-taken.

*Swain*, 2014 WL 1344393, * 6.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Yet, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Nonetheless, the "category of infractions that violate 'fundamental fairness'" has been defined very narrowly.  *Dowling v. U.S.*, 493 U.S. 342, 353

(1990); *Bugh,* 329 F.3d at 512.  Accordingly, a state court's evidentiary ruling generally will not constitute a due process violation unless it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Bugh*, 329 F.3d at 512 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

Swain has not shown or argued that his claim in Ground One raises a federal constitutional claim.[6]  Swain has not identified which statements of Ashlei Palmer and Keith Alexander were hearsay and improperly admitted.   Swain has not shown that the admission of testimony from Ashlei Palmer or Keith Alexander was so egregious that the evidentiary rulings resulted in a denial of due process.  As the transcript reflects, during trial, Swain was provided the opportunity to and did cross-examine both Ashlei Palmer and Keith Alexander.  Doc. 9-5, pp. 178-290; Doc. 9-6, pp. 2-116, 118-196.

In light of the foregoing, the undersigned recommends that the Court **DISMISS** Ground One as non-cognizable on federal habeas review.

### 2.  Ground Two should be DENIED

The Petition sets forth Ground Two and the facts supporting it as follows:

**Ground Two**: The trial court erred by allowing into evidence a tape of a jail house call from an alleged co-defendant to the Petitioner when the co-defendant did not testify and was not subject to confrontation cross examination in violation of the United States Constitution and Art. I, Sec. 10 of the Ohio Constitution.

**Supporting Facts**: The State of Ohio introduced evidence consisting of a tape of a conversation between Petitioner and a co-defendant Justin.  The call from Justin to Tion was made because the State of Ohio had misled the defense and the Court about Ashlei being an informant.  The State concealed a co-defendant's identity because the State of Ohio wanted to control when they could release her statement.

The Court indicated that the conversation of Justin after he was indicted, arrested and in jail and a guy indicted and out on bond was a "statement in furtherance of a

---

[6] Swain's confrontation clause challenge relating to the admission of a tape of a jail house call is raised in Ground Two.

conspiracy." One of the basic fundamental rights guaranteed an accused by both the state and federal Constitutions is the confrontation of the witnesses against him. The right of confrontation includes the right of cross-examination of the person who is the actual witness against him.

The constitutional right of cross-examination includes the right to impeach a witness's credibility. The Confrontation Clause prohibits the admission or use of testimonial statements of a witness who does not appear at trial unless that witness is unavailable to testify, and the defendant has had a prior opportunity for cross-examination.

Doc. 1, pp. 18-19.

Swain raised Ground Two in his direct appeal to the Sixth District Court of Appeals as his third assignment of error (Doc. 9-2, pp. 45-48) and in his Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio as his second proposition of law (Doc. 9-2, pp. 171-173). In reviewing the claim asserted in Ground Two, the state court of appeals stated:

{¶ 29} In his third assignment of error, Swain argues that the trial court erred in allowing the state to play a recording of the phone conversation placed by Stowers to Swain while Stowers was being held in the Erie County jail. Detective Gary Wichman testified at trial and identified Stowers' and Swain's voices. During their telephone conversation (which began with an automated message cautioning that the call would be recorded), Stowers informed Swain that Ashlei had approached the state with information linking Stowers, Swain, and Alexander to the crime. In it, Stowers says that his attorney informed him that the state was being protective of the identity of its informant because of concerns that Swain's attorney would divulge her identity to the other alleged perpetrators or to their families, subjecting the informant to harassment and intimidation. Much of the conversation between Stowers and Swain is unintelligible or barely intelligible. Swain says little, mainly just acknowledging Stowers' statements. But he contends that by allowing the taped conversation to be played for the jury, he was denied his Sixth Amendment right to confront the witnesses against him.

{¶ 30} The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion to defendant's prejudice, an appellate court should not disturb the trial court's decision. *State v. Barnes,* 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002). An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We must, therefore, determine whether the trial court abused its discretion in allowing the state to present the recorded phone call to the jury.

16

{¶ 31} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." *State v. Anderson,* 154 Ohio App.3d 789, 2003–Ohio–5439, 798 N.E.2d 1155, ¶ 22 (7th Dist.). However, "the right to confrontation is not absolute and 'does not necessarily prohibit the admission of hearsay statements against a criminal defendant.' " *Id.* at ¶ 23, quoting *Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638, 651 (1990). And not all out-of-court statements are hearsay. *State v. Blevins,* 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987).

{¶ 32} Under Evid.R. 801(D)(2), a party's own statement offered against him is not "hearsay." In addition, as previously discussed, under Evid.R. 801(D)(2)(e), a statement is not "hearsay" if it is offered against a party by a co-conspirator and was made during the course and in furtherance of the conspiracy. There must first be independent proof of the existence of the conspiracy. *State v. Milo,* 6 Ohio App.3d 19, 22–23, 451 N.E.2d 1253 (10th Dist.1982). Five things must be shown: (1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3) the declarant's participation in the conspiracy; (4) the statement was made during the course of the conspiracy; and (5) the statement was in furtherance of the conspiracy. *Id.*

{¶ 33} First, we question whether this recording of Stowers' and Swain's conversation even qualifies as a statement offered to prove the truth of the matter asserted under Evid.R. 801(C). Stowers' purpose for contacting Swain was to alert him to the fact that Ashlei had provided information to the police. During the call, Stowers tells Swain: "Man, that hoe did us, bro." He tells him: "[T]hey never had no case against Mr. Swain and Mr. Alexander until she went down there that day. * * * They think they, they have a, they have a, they have a sturdy case against you guys now. * * * Without, without her being there, there would be no case against no one." It would appear that the statements made during their conversation fall more into the category of "verbal acts," offered to prove that the words were spoken—not hearsay. *See, e.g., State v. Hill,* 1st Dist. Hamilton No. C–850686, 1986 WL 6816, *3 (June 18, 1986).

{¶ 34} In any event, independent evidence of the conspiracy was presented before the jury heard the recording. The evidence presented by the state was that Stowers asked Ashlei to lure Jackson to Sandusky. Swain picked up Stowers and Alexander, who knew that they would be committing a robbery that night. Alexander and Swain brought guns. When Ashlei passed by the house on her way to the Sail Inn, Stowers, Alexander and Swain were together on the porch waiting for her to tell them what type of vehicle Jackson drove. Another person was with Alexander and Stowers at the scene of the shooting. Ashlei and Alexander provided statements to police indicating that Swain was involved. Following the shooting, Ashlei told people that Swain had shot her, Swain and Alexander entered the house together, and Swain had a gun with him. Taken together, this

constituted prima facie evidence that Swain conspired with Stowers and others to rob Jackson, sufficient to admit Stowers' and Swain's statements under Evid.R. 801(D)(2). There is no requirement that each participant to a conspiracy communicate directly with each other or even know that additional participants would be recruited to commit the crime. *See, e.g., State v. Curry,* 9th Dist. Summit No. 23104, 2007–Ohio–238, ¶ 10 and *State v. Siferd,* 151 Ohio App.3d 103, 2002–Ohio–6801, 783 N.E.2d 591, ¶ 43 (3d Dist.) (applying R.C. 2923.32 and explaining that "a party to the conspiracy need not know the identity, or even the number, of his confederates").

{¶ 35} We also conclude that the statements were made in the course of and in furtherance of the conspiracy. "A conspiracy does not necessarily end with the commission of the crime." (Internal citation omitted.) *State v. Skipper,* 2d Dist. Montgomery App. No. 25404, 2013–Ohio–4508, ¶ 18. Statements made to conceal the crime and to avoid arrest, apprehension, and implication may also be in furtherance of the conspiracy. *See, e.g., id.* at ¶ 19 (finding that conspiracy to conceal crime continued after apprehension). The conversation that took place between Stowers and Swain would fall within this scope.

{¶ 36} We find Swain's third assignment of error not well-taken.

*Swain,* 2014 WL 1344393, * 6.

Swain challenges the trial court's evidentiary ruling to allow admission of a tape recording of a jail house call between Swain and Stowers, arguing that the trial court's ruling resulted in a violation of the Confrontation Clause.[7]  Doc. 1, pp. 18-19.  The state court of appeals considered and found Swain's Confrontation Clause claim not well-taken.  Thus, in order to be entitled to federal habeas relief, Swain must demonstrate that the state court's determination was contrary to or an unreasonable application of clearly established federal law. This, Swain has failed to do.

The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The

---

[7] As discussed above in connection with Ground One, it is not the role of a federal habeas court to review a state court's determination on an issue of state law.  Accordingly, to the extent that Swain contends that the trial court erred and should have excluded the jail house recording because the recording constitutes hearsay under Ohio's rules of evidence any such claim is non-cognizable in this federal habeas case.  *See e.g., Graves v. Romanowski,* 2008 WL 362990, * 5 (E.D. Mich. Feb. 11, 2008) (finding a petitioner's claim that the trial court violated his right to a fair trial by admitting recorded telephone conversations under a co-conspirator exception to the state's hearsay rules raised only an issue of state law that was non-cognizable on federal habeas review).

Supreme Court has held that the Sixth Amendment Confrontation Clause serves to bar out-of-court *testimonial* statements unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.  *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  Where non-testimonial statements are involved, the Confrontation Clause is not implicated.  *Davis v. Washington*¸ 547 U.S. 813, 821, 126 S.Ct. 226, 165 L.Ed.2d 224 (2006) ("A critical portion of [the *Crawford*] holding . . . is the phrase 'testimonial statements.'  Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause.").   Statements made in furtherance of a conspiracy are non-testimonial in nature.  *Crawford*, 541 U.S. at 56; *see also U.S. v. Martinez*, 430 F.3d 317, 329 (6th Cir. 2005) (following *Crawford* and finding that co-conspirator statements made in furtherance of a conspiracy are not testimonial in nature); *U.S. v. Stover*, 474 F.3d 904, 912-913 (6th Cir. 2007) (no violation of Confrontation Clause where the evidence that the defendant objected to was co-conspirators' statements because such statements are non-testimonial in nature) (relying on analysis in *Martinez*).

In this case, the state appellate court determined that the statements made during the recorded jail house telephone conversation between Swain and Stowers were made in furtherance of a conspiracy.  *Swain*, 2014 WL 1344393, * 6.  Since statements of co-conspirators made in furtherance of a conspiracy are non-testimonial in nature, the state appellate court's determination that the admission of the jail house telephone recording did not result in a violation of Swain's Sixth Amendment right to confront witnesses was not contrary to or an unreasonable application of clearly established federal law.  *See e.g., Graves v. Romanowski*, 2008 WL 362990, * 5 (E.D. Mich. Feb. 11, 2008) (relying on *Martinez* and *Stover* to deny habeas relied based on alleged violation of Confrontation Clause because tape recorded

statements which were determined by the state court to be made in furtherance of a conspiracy were non-testimonial in nature); *see also U.S. v. Coronado*, 2014 WL 6475824, * 4 (E.D. Mich. Nov. 19, 2014) ("[P]hone calls placed from prison between co-defendants are not testimonial.").

For the reasons discussed herein, the undersigned recommends that the Court **DENY** Ground Two.

### 3.  Ground Three should be DISMISSED

The Petition sets forth Ground Three and the facts supporting it as follows:

**Ground Three**: The trial court errs and violated the defendant's right to effective assistance of counsel by allowing into Evidence a Tape of a Jail House Call from an Alleged Co-Defendant to the Defendant When the Co-Defendant Made Disparaging and Untrue remarks about the defendant's counsel made by the State of Ohio to the Co-Defendant's Attorney.

**Supporting Facts**: The State of Ohio, over objection played a tape wherein the co-defendant Justin indicated that his lawyer told him that the State of Ohio indicated that they didn't want Respondent's counsel to know about a hidden co-defendant.

> ". . . And listen, he said, he said the reason the why the prosecution was pleading so hard with your lawyer, not to tell your lawyer, the reason they didn't want to tell your lawyer is because some shit, they like, ugh, they know how he gets down. . . .some shit about he'll let everybody know, everybody going on intimidation and intimidating a witness or some shit he said. Tr. 1278

> JUSTIN STOWERS: Listen, listen he basically said the reason why the prosecution (unintelligible) so hard keeping it a secret from your lawyer is because he the type of mother fucker that's gonna let everybody know that she had just went to the police. Id.

Herein, the statement had no relevance, probative value and it was highly prejudicial to the defendant and prevented him from receiving a fair trial. The introduction violated the Petitioner's right to have effective assistance of counsel in violation of the 6th Amendment.

Doc. 1, pp. 19-20.

In his fourth assignment of error in his direct appeal to the Sixth District Court of Appeals (Doc. 9-2, pp. 48-49) and in his third proposition of law in his Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio (Doc. 9-2, pp. 173-174), Swain argued that the trial court erred in admitting the jail house recording because the tape recording, which included disparaging remarks about Swain's trial counsel, had no relevance or probative value, was highly prejudicial, and prevented Swain from receiving a fair trial.  In reviewing that claim, the state appellate court stated:

{¶ 37} In his fourth assignment of error, Swain again challenges the trial court's decision to admit the recorded phone conversation into evidence, this time arguing that certain statements made during the conversation disparaged defense counsel and were untrue.

{¶ 38} During Stowers' and Swain's conversation, in explaining how he learned that Ashlei was the state's informant, Stowers told Swain that the prosecution feared that defense counsel would intimidate Ashlei. Swain argues that these statements had no probative value and that he was prejudiced by allowing the jury to hear these "disparaging" remarks about his counsel.

{¶ 39} While we agree that the state's concern about what counsel would do does not make it more or less probable that Swain committed the offenses with which he was charged, this was not the purpose for admitting the statements. The statements were admitted because they provided context for the information that Stowers was relaying to Swain about the identity of the confidential informant—not to prove that Swain's counsel actually intimidates witnesses. There was no need for the state to set a foundation for the statements, as Swain suggests in his brief, and the statements were not being offered for their truth, thus they were not hearsay.

{¶ 40} While we understand that these comments may have offended defense counsel, Swain has not articulated that he was prejudiced by them in any way. He suggests that a jury may infer that if counsel intends to intimidate a witness, it must be because the defendant is guilty. We do not agree with this logic. We think the comments go more to the quality of the professional relationship between defense counsel and the prosecutor's office and not to whether a particular criminal defendant is guilty or not guilty of a crime.

{¶ 41} We find Swain's fourth assignment of error not well-taken.

*Swain*, 2014 WL 1344393, * 8-9.[8]

As discussed more fully above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Further, a state court's evidentiary ruling generally will not constitute a due process violation unless it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh*, 329 F.3d at 512 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)). Swain has not shown that the trial court's evidentiary ruling admitting the jail house recording was so egregious that it resulted in a denial of due process.

In Ground Three, Swain also contends that the trial court's admission of the jail house recording violated his right to effective assistance of counsel under the Sixth Amendment. This portion of Ground Three was raised in his Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio but was not raised by Swain in direct appeal to the state court of appeals. Thus, this claim may be procedurally defaulted. *See Williams*, 460 F.3d at 806 ("[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver). Even if not procedurally defaulted, Swain makes no attempt to show how his trial counsel was ineffective or how the trial court's admission of the tape recording resulted in a denial of his right to effective assistance of counsel. Accordingly, the Court should find Swain's claim that he was denied effective assistance of trial counsel waived. *See McPherson v. Kelsey*,

---

[8] Swain sought reconsideration of the state court of appeals' decision with respect to this fourth assignment of error. Doc. 9-2, pp. 144-149. The state court of appeals denied that motion. Doc. 9-2, pp. 153-156.

125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." ) (internal citations omitted).

In light of the foregoing, the undersigned recommends that the Court **DISMISS** Ground Three as non-cognizable, procedurally defaulted, and/or waived.

### 4.  Ground Four should be DISMISSED in part and DENIED in part

The Petition sets forth Ground Four and the facts supporting it as follows:

**Ground Four**: The evidence was insufficient as a matter of law and the verdict was against the manifest weight of the evidence a reviewing court must discharge the defendant as it violates due process.

**Supporting Facts**: In reviewing a challenge of insufficient evidence, "the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  Sufficiency of the evidence is a test of adequacy, used to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.

There is no testimony that indicates that Petitioner shot or attempted to rob Derek Jackson.  There is no testimony that indicates that Petitioner had any agreement to aid and abet Justin, Keith or Ashlei.  You have two co-defendants and neither of them can say they planned to rob, shoot, steal or do anything else with Petitioner.

The State of Ohio wants this Court to believe that somehow a denial by Petitioner is an admission.  They further want this Court to believe words like that "Hoe did us" means that Justin and Petitioner planned a robbery with Keith and Ashlei when Keith and Ashlei don't indicate that they planned a robbery with Petitioner. The State could not get one of their witnesses to state that they planned a robbery with Petitioner.  The indictment states that Petitioner aided and abetted Keith Alexander and Ashlei Palmer.  Yet the two co-defendants do no indicate that Tion aided and abetted them.  There is no evidence that Petitioner aided and abetted Justin.  There is no evidence Keith aided and abetted Ashlei.

Justin calls Petitioner because the State of Ohio was concealing evidence and misleading the court, not because they were in furtherance of a conspiracy. Where are the other calls?  If Justin made one call he could have made plenty more.  Petitioner denied any involvement in the crimes in the tapes.

Doc. 1, pp. 20-21.

Swain raised Ground Four in his direct appeal to the Sixth District Court of Appeals as his fifth assignment of error (Doc. 9-2, pp. 49-51) and in his Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio as his fourth proposition of law (Doc. 9-2, pp. 174-176).

In Ground Four, Swain contends that his convictions were against the manifest weight of the evidence and not supported by sufficient evidence.

### a.   Manifest weight of the evidence

"A 'manifest weight of evidence' claim, which is based on a state law concept that is 'both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding," *Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)).  Accordingly, Swain's manifest weight of the evidence claim should be **DISMISSED** as not cognizable.

### b.   Sufficiency of the evidence

Swain also argues his convictions were not supported by sufficient evidence.  Unlike a manifest weight of the evidence claim, a sufficiency of the evidence claim is a cognizable claim on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).   Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).   "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Brown*, 567 F.3d at 205; *Snyder v. Marion Correctional Inst., Warden*, 608 Fed. Appx. 325, 327 (6th Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, — U.S. —, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").   Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

25

In analyzing Swain's sufficiency of the evidence claim and finding his assignment of error to be without merit, the state appellate court stated:

{¶ 42} Finally, in his fifth assignment of error, Swain claims that the evidence was insufficient as a matter of law and that the jury's verdict was against the manifest weight of the evidence. He argues that there was no testimony that Swain shot at or attempted to rob Jackson and no testimony to establish that Swain agreed to aid and abet Stowers, Alexander, and Ashlei. He points to the fact that plea deals were reached with Alexander and Ashlei, yet neither could say that they formed a plan to shoot or rob Jackson with Swain and no one could identify him as the shooter.

{¶ 43} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St .3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 44} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.' " *State v. Robinson,* 6th Dist. Lucas No. L–10–1369, 2012–Ohio–6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 45} Swain was charged with complicity, under R.C. 2923.03(A)(2), in the attempted aggravated robbery and felonious assault of Derek Jackson—violations of R.C. 2911.01 and 2903.11—along with firearms offenses. Under R.C. 2911.01(A),

[n]o person, in attempting or committing a theft offense * * *, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * [or][i]nflict,

or attempt to inflict, serious physical harm on another. Under R.C. 2903.11(A)(2), "[n]o person shall knowingly * * * [c]ause or attempt to cause serious physical harm to another * * * by means of a deadly weapon * * *.

{¶ 46} The firearms statutes under which Swain was charged were R.C. 2923.13(A)(2) and 2941.145. Under R.C. 2923.13(A)(2),

> [u]nless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

Under R.C. 2941.145, the indictment specified that Swain had a firearm while committing the offenses.

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. *State v. Haller,* 3d Dist. Allen No. 1–11–34, 2012–Ohio–5233, 982 N.E.2d 111, ¶ 12, *appeal not allowed,* 134 Ohio St.3d 1508, 2013–Ohio–1123, 984 N.E.2d 1102, quoting *State v. Johnson,* 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus.

A defendant's criminal intent may be inferred from his presence, companionship, and conduct before and after the offense is committed and may be demonstrated by both direct and circumstantial evidence. *Id.* Mere presence of the accused is not sufficient. *State v. Gragg,* 173 Ohio App.3d 270, 2007–Ohio–4731, 878 N.E.2d 55, ¶ 21 (12th Dist.).

{¶ 47} We have previously summarized the evidence presented by the state and we conclude that this evidence was sufficient to establish that Swain was both present and participated in the shooting and the attempt to rob Jackson. Swain's conduct before and after the incident is consistent with the state's theory of the case. The type of casings found at the scene and the testimony as to the type of guns that were carried that evening are also consistent. And the state offered evidence that Swain had previous convictions constituting a "disability" under R.C. 2923.13(A)(2) which prohibited him from carrying a firearm.

{¶ 48} Certainly Ashlei's and Alexander's testimony presented credibility issues. Each had provided inconsistent statements in the past. Each had been offered plea

27

agreements in exchange for their testimony. But the jury was aware of these facts and defense counsel cross-examined both witnesses. It was within the jury's province to make credibility determinations. *See, e.g., State v. Ivy,* 8th Dist. Cuyahoga No. 93250, 2010–Ohio–2463, ¶ 22 (concluding that jury had not lost its way in choosing to believe testimony of state's witnesses who had accepted plea agreements that reduced charges against them).

{¶ 49} We also acknowledge that Swain, a 5′7″ African–American, did not fit Jackson's description of the shooter. Jackson explained at trial that the shooter, if not white, was a light-skinned African–American, and his face was partially concealed by what Jackson thought was a mask. Eyewitnesses often have varying descriptions of a perpetrator. *See, e.g., State v. Cook,* 10th Dist. Franklin No. 02AP896, 02AP–897, 2003–Ohio–2483, ¶ 31–33. But it was for the jury to determine whether the discrepancy in Jackson's description of the shooter and his inability to identify him was fatal to the state's case. Here, the jury determined that it was not. Given the totality of the evidence presented to the jury, we cannot say that its verdict was against the manifest weight of the evidence.

{¶ 50} We find Swain's fifth assignment of error not well-taken.

*Swain*, 2014 WL 1344393, * 9-11.

Considering that it is not for this court to "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury[,]" *Brown*, 567 F.3d at 205, and considering the evidence in the light most favorable to the prosecution, the undersigned finds that a rational trier of fact could have found the essential elements of the crimes that Swain was convicted of beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.  Moreover, in light of the second layer of deference accorded to the state court's adjudication of a sufficiency claim, even if this Court concluded that a rational trier of fact could not have found guilt beyond a reasonable doubt, federal habeas relief would not be warranted because the court of appeals' sufficiency determination was not unreasonable.

Here, the state court applied the correct standard under *Jackson* when assessing Swain's sufficiency of the evidence claim. *Swain*, 2014 WL 1344393, ¶ 43 (indicating that, when reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence

in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.").  The state court of appeals considered the statutory elements of the offenses for which Swain was indicted and convicted in the light most favorable to the prosecution and reached the conclusion that there was sufficient evidence to support the convictions.  Swain has not demonstrated that the state court of appeals' sufficiency determination was unreasonable.  Accordingly, Swain's sufficiency of the evidence claim should be **DENIED**.

Based on the foregoing, the undersigned recommends that the Court **DISMISS** Swain's manifest weight of the evidence claim in Ground Four and **DENY** Swain's sufficiency of the evidence claim in Ground Four.

## IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS in part** and **DENY in part** Swain's Petition.

Dated: May 23, 2016

Kathleen B. Burke
United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).